You may proceed. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. My name is Franklin Nelson, attorney for petitioners. There are two principal issues in this case. The first is whether the immigration judge's adverse credibility finding is supported by substantial evidence. The second is whether or not the petitioner's credible testimony established that he has a well-founded fear of persecution if he returns to China. Petitioner applied for asylum approximately two months after he arrived in the United States in 1993. He arrived as a crewman from the People's Republic of China. Petitioner's problems began in 1989 when he wrote a composition for his school, critical of the Chinese government in, I guess, the immediate precursor to the Tiananmen Square tragedy. Those problems did not come to a head until after he'd already been assigned as a crewman on a ship and his former teacher informed the political commissar on the ship that he'd written this paper, and as a result the political commissar punished the petitioner by forcing him to write reports about his political thoughts, do extra work, limited his shore leave, had him watched by other crewmen, and canceled his vacation. His problems increased when the ship arrived in Portland, Oregon, and a church group approached him and asked him about the wages and working conditions aboard the ship. He answered their questions. The political commissar found out about that and punished him further, this time for revealing state secrets. We have a, you know, in this case, unlike some cases, we have this alternate finding. So in some ways credibility falls out because the I.J. says, well, even if he were credible, in other words, I don't think he's credible, but even if he were, I think her words were they couldn't find that he has met the burden to show that any harm would come to him if he went back to China. Yes, Your Honor. So it seems that we ought to focus on that because let's just assume he's credible because the I.J. did. Yes, Your Honor, we'll focus on that. It's actually somewhat unclear from the I.J.'s opinion what her credibility finding was, but assuming he is credible, the court is correct. The I.J. did make an alternative finding, but when she made her alternative finding, she either ignored or misinterpreted a substantial amount of country conditions evidence indicating that he would, in fact, be persecuted upon his return to China. The basis of his well-founded fear is twofold. He wrote this essay critical of the Chinese government, which the government knows about. In addition, he revealed wage and working conditions information, which the Chinese government considers to be a state secret and the Chinese government also knows about. His fear is based on the fact that if he returns to China, the government certainly has a reasonable opportunity to find out that he's returned, find out about these things that he's done. They will know about his background or at least have the opportunity to know. And with all of that information, he is afraid that they are going to persecute him based on all of these things upon his return to China. What evidence is there in the record that suggests that – it seems to me the record would probably support the notion that he would not be a favored person were he to retire to China. But the question is whether the manner in which he would be disfavored would amount to persecution within our statute. In other words, if he – they're tough. The statute's tough. And the fact that he wouldn't get a job or wouldn't be promoted or would be watched or surveyed or whatever, none of that's going to fly in terms of persecution. He has to demonstrate that what would go – happen to him if he went back is essentially he would be in prison for some lengthy period of time, not a short period of time, or he would be physically injured in some fashion. Yes, Your Honor. The – and the court touched upon one of the issues with the judge's opinion. One of the things that the judge said is that she did not find that he would be persecuted or that anything would happen to him at all if he returned to China. Not sure that she was announcing a standard when she said that, but to the extent that she was, that's not the correct standard. That's true. I guess she said that, but the question then is she discussed the specifics, lack of past persecution and evidence on the future. So how do we – what is the legal effect of that? Because that is an interesting question. As the court knows, the petitioner only must establish that he has at least a 10 percent probability that he will be persecuted in the future. What the persecution – what the petitioner has established is the fact of past harassment at the very least on a part of the political conversation. But that's not – is there any evidence in the record that would – the record that – the issue you've noted about the erroneous standard is an intriguing one, but if there were no evidence in the record on which anybody could find that the right standard, then it would be sort of a futile act to be sending it back. So first I'd like to know what is the evidence in the record from which anybody could conclude that he was not only going to be harassed, discriminated against and made miserable, but persecuted within the very tough standard that we have? In addition to the country conditions report, which does at least touch on what happens to people when they are accused of revealing state secrets in China. Well, of this kind. I mean, there are state secrets and there are state secrets, but what about this kind of state secret? There were several documents actually that were submitted by the prior attorney specifically in support of revealing wages and labor conditions issues to people outside China. There is a document called – What happened – what does it say happened to the people? It says that they were accused of revealing state secrets and that they were imprisoned for various periods of time upon their return to China, that they were actually detained and imprisoned for that violation. And where is that in the record? That information would be in the Amnesty International report. It appears in pages 330, 331 of the administrative records, Your Honor. The complaint against the government of China that appears in pages 336 to 407 of the administrative record talks about a variety of incidences, including what happens to people who are accused of revealing state secrets. I believe that that particular report talks about other instances, specifically people who have been accused of revealing wage information and what has happened to them specifically upon their return. And since we don't really have much discussion of that in the oral decision in terms of – assuming he is credible, then we have to take his state secret testimony as credible, correct? Yes, Your Honor. And if that's credible, then the IJ didn't really comment on the fact that there is this evidence that you would be persecuted. That just doesn't – not even in the opinion, right? That's correct. What the immigration judge did is she noted the evidence and she said, well, this really isn't the same because these people had all filed formal complaints against the government and the petitioner in this case had not. I believe that that is a distinction without a difference. These people have filed formal complaints against the government and that is how the government found out that this person had done the things that they didn't want him to do. Well, in this particular case, the political commissar on board Schipp found out and the petitioner is afraid that that information has gotten back to the government and that is how they found out. So a formal complaint process is just one way of the government finding out. Once they find out, then the information is pretty clear what the government has done in the past with these people. Would you like to save the remaining time for rebuttal? Thank you, Your Honor. I wasn't keeping track. May it please the Court. John Hogan on behalf of the Attorney General. Nothing compels a different conclusion than was reached by the immigration judge in this case. Do you think there was a credibility finding? It was limited, yes, but the immigration judge did say, assuming even if credible. Well, I understand, but was there even an adverse credibility finding? I mean, this is one of these cases where she said things like, well, there are problems with his testimony. Did she ever make an adverse credibility finding? The magic words were not exactly used, Your Honor, but I think by reading it in totality of all eight cases. Well, under our case law and in a way that we have determined this, did she make an adverse credibility finding? I believe so, Your Honor, yes, because she says that there's material inconsistencies in the case and she goes to those. Well, that's true, but there can be material inconsistencies and you can still believe somebody. But she doesn't, though Iran does say, assuming even he was, if I did believe his testimony. So I think that's, you have to assume it, but I think when she's under the case law of the circuit, it still allows it. But let's go on with the assumption there wasn't one or that there was an adverse finding and, I mean, an alternative finding. If there was an alternative finding, what we then have is where's the persecution or the fear of it is really the more important question. And what we have is that we do have, in essence, the Chinese government on the boat with him, the political commissar, and he's aware of both of these instances. And, in effect, nothing really happens to him to the extent of being persecuted or fearing persecution. Well, he wasn't in China at the time. No, Your Honor, but the boat. He was on a boat. Right, with a political commissar, a representative of the government there with him. And that person realized, okay, you've written something four years ago. He claims he was surveyed and he was given extra work and he was, and various things, which are the things that can happen to you on a ship, happened. And he claims that if he went back to China, once he got back to China, worse things were going to happen to him. And the real problem, I guess the real difficult question is that the IJ seems to have articulated an erroneous standard. So how does that matter here? I don't think it's an erroneous standard. I think when she says, uses that word any, she's basically saying you can't even meet the 10 percent to show a well-founded fear. She's looking at everything and saying, whatever you've told me, you can't even, there's nothing at all to show a well-founded fear of persecution in this case. And I think that's because when you take the two instances, whatever happens to him, it's unpleasant,  and he was allowed to go ashore even after supposedly talking to individuals. Let me understand this. So you're saying when she says, can't show that any harm would come to him, that what she's really saying is. He had not proven that he even faces the 10 percent. That there's zero. Yes. And that's what she's saying by that. So it's not really an incorrect standard, just that he can't. Interesting, because I have not looked at it that way particularly, but it's an interesting argument that you're making. And I think that conclusion is, nothing compels a different conclusion than that, because of the two instances, just the government is aware of what's going on, on the boat at the time. It's a very fine cut, but the Cardozo-Fonseca standard is a probability standard, not a number of, amount of harm standard. So even, the question isn't whether some harm versus no harm is going to come to him. It's whether, it's what the likelihood that any harm was going to come to him. So when she says, I can't show that any harm would come to him, that's not an evaluation of how likely it is. She seems to be saying no harm will come to him, rather than there's not even a 10 percent chance that any harm would come to him. So I don't see what the any harm has to do with the risk, the risk prediction. I guess, Your Honor, the government just read it different as when she says any. Saying what? That he doesn't meet any of, he can't show anything that. He can't show any harm would come to him. Exactly, Your Honor. I guess it's a, you know, it's a semantic question of, if there absolutely wouldn't be any, then the probability would be zero. Yes, Your Honor. Is that what you're saying basically? Yes, Your Honor. And I think even the question is, you know, what, well, has anything happened to your family because of this? And he says, well, yes, my sister wasn't allowed to go to school, but she's not allowed to go to school because I wrote a letter or not allowed to go to school because I talked to some missionaries. She's not allowed to go to school supposedly because he jumped ship, which is not what he's claiming and basically is an asylum seeker. That's not what he's claiming as the basis of the persecution, the political opinion. He's basing it on writing a letter. There is some evidence in the record that one thing that the I.J. disbelieved, i.e., that revealing working conditions would be considered a state secret. I mean, it's very odd to us, but there seems to be some evidence in the record that that's the case. Your Honor, I think it's minimal at most, and as the judge said, is taking a report. I didn't say that. He said I don't. I mean, this is the problem with this I.J. opinion. I'm sure somebody could have written an opinion here that wouldn't have these problems, but he just said I can't see any harm would come. He said I don't see any reference at all to disclosure or releasing of any statements, i.e., state secrets pertaining to salary, living conditions, food or entertainment. Isn't that wrong? I mean, there is some evidence. You just said there was. There is some, Your Honor, but I guess also in the same record is a 2001 report from the State Department where there doesn't go into these ship workers, suppose that from the same report from 1996. So it's the evidence, no matter what he said happened to him in 1996, which might have one line of a 20-page report that might seem to suggest, but back his position, what the judge is saying is looking at the totality of it based on another report in the record. I mean, that's maybe what he should have said, but it isn't what he said. He said I don't see any reference at all. And that's wrong. There is a reference at all. He said I don't think that I cannot find that he's meant that any harm would come to him. That's not the right standard. I mean, it's a peculiar business. I think because, Your Honor, the specific words of letting people know your wages is a state secret doesn't appear exactly in that report anywhere, and that's what the judge was getting at. You could possibly infer it, as the Petitioner would like, wanted the judge to, but that didn't happen in this case. What do we do? Let me ask you about this. This goes to the question of whether there was a credibility finding. So the judge says I find the bottom line is I do not find the Respondent credible. He's embellished to the point of false testimony, she says at the end of her, and he comes perilously close to giving false testimony. But I don't make that finding so that he can have voluntary departure. What do we do with that? Does that mean there's no credibility finding in the end? I think there is a credibility finding, Your Honor. I think the judge was giving a break to the Petitioner by giving him voluntary departure, even having found him not credible. And that's what she was splitting the baby or giving him something at the end of the hearing to perhaps make eventual removal easier, I guess, in her mind is what she was thinking. Well, if there were a credibility finding, what would it be based on? As far as I can tell, it's based strictly on the fact that in his first application, he mentioned only the Tiananmen Square essay. In his second application, he also mentioned this incident with revealing the wages and working conditions. That's it. Correct. And that's it. It is, Your Honor. But that's why that first – so it's not where in the first application he mentions an incident and then the second one he clears up any confusion about it and then this Court would have a problem with that if we found – But isn't our case – doesn't our case law with some justifications say that – the first one didn't say the second thing didn't happen. So what's the contradiction? Well, the contradiction is if his claim that he fears persecution going back is because I revealed a state secret, that should be in the application itself. But it's not a contradiction. It's – well – I mean, quite plausible. We don't know what happened, but he might have gone to a new lawyer and the new lawyer might have said, and what else happened to you? And he said, all this thing happened to me, but I don't think it's very significant. And the lawyer says, oh, well, that's very significant. You should put it in your application. I mean, how is he supposed to know that's significant? Well, Your Honor, it's a big omission, I think, because if it's not saying something happened on a different date and let me clear it up with my attorney, but it's actually something that – I mean, if he was hit over the head, you know, 15 times and didn't write that down, I mean, first of all, even then our case law wouldn't necessarily say there's a contradiction. But this is more in the way of something that happened that may have legal significance or may not, and he doesn't necessarily know it. So he doesn't put it in the first time, and he does put it in the second time, but there's no negation of it. I'm just not seeing where the contradiction is or why there's not a perfectly obvious explanation of why it was in the second time and not the first time. Well, Your Honor, because in his mind, if he was restricted to the ship or not allowed to go ashore after that second incident because of what he said, that's a pretty strong indication that he better put that down because the political commissar confronted him about it again, that second incident. So it wasn't like he made a statement, went ashore, never came back, and only now he's finding out after talking to his attorney that, wow, that was a state secret I revealed. He knew it at the time because he was confronted by he was escorted ashore, and he was allowed to go ashore, but he was escorted, and he even says, well, the people that escorted me and let me go. He did that, but he didn't know whether it was legally relevant necessarily. Well, I think he, Your Honor, it's his claim, but I think by the fact of being questioned about it by the Chinese commissar on the ship at the time it happened, it's a strong indication that it should have been put in that first application itself. You know, this case brings to mind the difficulties we have with these immigration judge decisions where it's kind of like a plea. When you take a plea in the district court, you have a checklist. You make sure you go through all of these things, and maybe they mean one thing, but they say something else. So this is what gives us difficulty because they don't even match the statute, which seems like an odd thing. Obviously, you're not the immigration judge. You're simply having to defend it. I'm sure, Your Honor, is where the attorney general has asked for review. And I think that this would be a good example. I don't know how we'll rule in this case, but it's a good example of something that would be easy to fix at the outset that would then not leave either the BIA or the Court of Appeals scratching its head. So you might think of this as a good example one way or the other. And I know there's a study undergoing by the attorney general. Thank you. Absolutely. Thank you. You have a short time for rebuttal if you'd like to take that. The court asked me previously about evidence in the record regarding possible harm that would come to them. The evidence appears generally in pages 396 to 400 of the administrative record. There's actually a specific incident from a particular crew that appears at page 397 to 398 of the administrative record regarding what the Chinese government does, including imprisonment of some crew members for a period of 12 months. Government counsel raised a couple of issues before this court. One is the issue of the 2001 report and what it mentions or doesn't mention. And I would feel that what that really is is a changed country conditions argument since the 2001 report came out long after he filed his application. Whether or not the government carries its burden, it is its burden to prove changed country conditions once the petitioner has established his eligibility for asylum is a different burden as announced by this court. And the judge did not address that in the first instance. And I do not believe the administrative record supports such a finding in the second instance. Also, to the extent the judge's finding regarding petitioner's well-founded fear is considered to be no evidence at all, substantial evidence does not support that finding because there clearly is evidence in the record that he might suffer harm upon his return. And I'm just out of time. Only by nine seconds. Thank you. Thank both counsel for your arguments this morning. The case of Huang v. Gonzales is submitted. Thank you.
judges: McKeown, Berzon, King